# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| JEFFREY WILLIAMS | * | |
| Plaintiff | * | |
| v | * | Civil Action No. PJM-13-427 |
| A.CARTWRIGHT, *et al.* | * | |
| Defendants | * | |

## MEMORANDUM OPINION

Defendants filed a Motion to Dismiss or for Summary Judgment in the above-captioned civil rights Complaint. ECF No. 12. Plaintiff opposes the motion. ECF No. 14. Also pending is Plaintiff's Motion for Default Judgment. ECF No. 11. The Court finds a hearing in this matter unnecessary. *See* Local Rule 105.6 (D. Md. 2011).

## Background

Plaintiff Jeffrey Williams ("Williams"), who was at all times relevant to the Complaint incarcerated at Western Correctional Institution (WCI),[1] claims on November 19, 2012, Officer A. Cartwright wrote a false report alleging she saw Williams masturbating and as a result of the report he was found guilty of an institutional disciplinary rule. He asserts he was denied a chance to have the institutional surveillance video reviewed at the disciplinary hearing which he maintains would have exonerated him and established that Cartwright lied. ECF No. 1 at p. 3.

Williams further alleges that Officer Wilson, who escorted Williams to an adjustment hearing, assaulted him when he pulled him out of the hearing room chair, pushed him into a wall, and smashed his face against the wall while Williams was handcuffed. Williams claims he was then escorted back to his cell by Wilson and Sgt. William Slate. He states Slate attempted to

---
[1] While this case was pending Williams was transferred to Maryland Correctional Training Center (MCTC). *See* ECF No. 17.

break his arm and, after arriving at his cell, he was required to be handcuffed again and escorted to a segregation cell in B-1 unit. Upon arriving to the area of the segregation cell, Williams claims that Wilson and Slate punched him in the face, choked him and slammed him to the floor. He alleges Wilson held him down while Slate punched him in the ribs as hard as he could. Williams was then stripped of his clothes and left in the segregation cell for four days without running water or lunch meals. He further claims he was denied any medical treatment for injuries to his neck, back and right pinky finger following the assault. As relief, Williams seeks a transfer to another prison as well as monetary damages against each of the officers involved. ECF No. 1 at p. 3.

Defendants assert that on November 19, 2012, Cartwright, who was assigned to yard post #2, observed Williams masturbating as she approached the yard for her rounds. She states Williams made no attempt to turn away from her as she continued to walk toward the yard and she wrote a notice of institutional rule violation charging Williams with violating Rule 119.[2] Williams requested the surveillance video of the prison yard as evidence in his case. ECF No. 12 at Ex. 2. A hearing was held on the notice of infraction on January 11, 2013, before Hearing Officer Mack; Cartwright and Williams testified at the hearing. *Id*. at Ex. 3.

Williams claimed at the hearing that it was impossible for Cartwright to make rounds at the time she claimed and that other inmates who are gang members would have assaulted him had he committed the act alleged. *Id*. at Ex. 3, p. 2. Additionally, Williams asserted that Cartwright failed to mention some important facts about where he was standing at the time of the incident. Cartwright testified via telephone at Williams's disciplinary hearing and claims her testimony was truthful. *Id*. at Ex. 2. Cartwright testified that she saw Williams with his penis exposed, he was engaged in masturbation, he did not turn away when he saw her, and she

---

[2] Rule 119 prohibits acts of indecent exposure or masturbation. ECF No. 12 at Ex. 2.

2

identified him by his state identification. *Id*. at Ex. 3, p. 3. Hearing Officer Mack stated there was no record found for the video requested by Williams. Mack found Williams guilty of violating Rule 119, finding that Williams's testimony was not convincing because it did not directly address the rule allegedly violated. Mack imposed sanctions of 180 days segregation and revocation of 120 days credit, noting that Williams had four previous violations of the same rule. *Id*. at Ex. 3 at pp. 3 – 4.

At the disciplinary hearing on January 11, 2013, Slate and Wilson were attendance. ECF No. 12 at Ex. 5 and 6. After Williams was found guilty he became angry, began cursing and got up from his chair.[3] *Id*. at Ex. 7. Mack states he did not observe Slate or Wilson use excessive force against Williams; however, due to Williams's behavior Slate advised Wilson to remove Williams form the room. *Id*., *see also* Ex. 5. Slate and Wilson picked Williams up by his arms, causing him to walk in a bent-over position back to his cell. *Id*. at Ex. 5. Slate and Wilson deny ever attempting to break Williams's arms during the escort back to this housing unit and claim the force used was consistent with their training and was not excessive. *Id*. at Ex. 5 and 6.

When Williams arrived at the housing unit with Slate and Wilson, he began "hollering" at other inmates and threatened to throw feces on staff. *Id*. Wilson charged Williams with an institutional rule violation for the threat he made to staff. ECF No. 12 at Ex. 6, p. 4. Based on Williams's behavior, he was placed back into handcuffs and escorted to cell B-1 for purposes of a strip search, which was performed without incident. After the search was completed, Williams was instructed to go to the floor on his knees with his feet crossed as Slate and Wilson exited the cell. A shield was placed in front of the cell door and Williams was left in the cell. Slated and Wilson alleges that Williams never complained of an injury, did not request medical attention,

---

[3] Williams jumped out of his chair and told the hearing officer "fuck you." ECF No. 12 at Ex. 5, p. 2.

and exhibited no signs of injury. Additionally, Defendants deny failing to provide Williams with food or clothes for four days. *Id*. at Ex. 5 and 6.

Williams was served with the notice of infraction written by Wilson by Correctional Officer Lark. *Id*. at Ex. 8. Williams did not complain to Lark that he had been assaulted or suffered any injuries requiring medical attention when Lark served the notice of infraction on Williams. *Id*. At a disciplinary hearing Williams was found guilty of making threats (Rule 104) as well as using disrespectful and vulgar language (Rule 405). *Id*. Although Williams claimed that he had been assaulted, the hearing officer did not find his assertion credible. *Id*.

On January 15, 2013, Williams was seen by medical staff for a wellness check. ECF No. 12 at Ex. 10, pp. 53 – 54. At that time Williams did not report he had been assaulted by officers and no injuries were noted. Additionally, Williams did not complain that he had been deprived of adequate food. *Id*. Photographs were taken of Williams that day in light of his assertion at the disciplinary hearing that he had been assaulted. *Id*. at Ex. 11. Williams was also seen on January 18, 2013, for ear pain and again made no complaints regarding alleged injuries incurred as a result of an assault. *Id*. at Ex. 10, pp. 5 and 52.

Williams was seen again on January 30, 2013, for a complaint regarding pain in his ribs and pinky finger. *Id*. at Ex. 10, pp. 48 – 49. Medical staff indicated the date of onset of the problem as January 30, 2013, further noting that the complaint had not been mentioned during his two recent appointments. *Id*. A physical examination of Williams revealed no swelling, bruising, or malformation, and good range of motion for his finger. *Id*. at pp. 37 – 38; 45 – 46.

## Standard of Review

Summary Judgment is governed by Fed. R. Civ. P. 56(a) which provides that:

> The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion:

> By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.

*Anderson v. Liberty Lobby, Inc.*, 477 U. S. 242, 247-48 (1986) (emphasis in original).

"The party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 525 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)). The court should "view the evidence in the light most favorable to . . . the nonmovant, and draw all inferences in her favor without weighing the evidence or assessing the witness' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 644-45 (4th Cir. 2002). The court must, however, also abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat*, 346 F.3d at 526 (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993), and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)).

## Analysis

### Excessive Force

Whether force used by prison officials was excessive is determined by inquiring if "force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U. S. 1, 6-7 (1992). This court must look

5

at the need for application of force; the relationship between that need and the amount of force applied; the extent of the injury inflicted; the extent of the threat to the safety of staff and inmates as reasonably perceived by prison officials; and any efforts made to temper the severity of the response. *Whitley v. Albers*, 475 U. S. 312, 321 (1986). The absence of significant injury alone is not dispositive of a claim of excessive force. *Wilkens v. Gaddy*, __ U.S. __, 130 S. Ct. 1175 (2010). The extent of injury incurred is one factor indicative of whether or not the force used was necessary in a particular situation, but if force is applied maliciously and sadistically liability is not avoided simply because the prisoner had the good fortune to escape serious harm. *Id*.

In opposition to Defendants' motion, Williams submits a copy of a Notice of Infraction written by Slate charging him with threatening language during the January 11, 2013 disciplinary hearing as well as a copy of the adjustment hearing officer's decision finding him not guilty of the charges. ECF No. 14 at Att. 9. The Notice of Infraction written by Wilson, however, concerns Williams's behavior after leaving the adjustment hearing and arriving in the housing unit when he threatened to assault staff. ECF No. 12 at Ex. 6, p. 4. Whether Williams engaged in threatening behavior before or after the hearing is not dispositive of whether he was subjected to an excessive amount of force when he was removed from the hearing.

Defendants submitted an audio tape of the January 11, 2013 adjustment hearing which records Williams's statement to the hearing officer at the end of the hearing. The audio tape continues to record for several minutes following his statement and does not reflect any indication that Williams was slammed face first into a wall as he claims. Rather, the only sound recorded is the sound of the hearing officer typing on a keyboard. ECF No. 15 at Ex. 5. Additionally, the medical records submitted by Defendants, as well as the photograph of Williams, do not evidence any injuries indicative of the type of assault Williams alleges

occurred. ECF No. 12 at Ex. 10 at p. 48 and Ex. 11. Williams does not dispute that he did not report injuries to other officers he encountered following his placement into an isolation cell, nor does he dispute that he did not submit requests for medical attention. ECF No. 14. Thus, the record evidence does not support a finding that a genuine dispute of material fact exists regarding the use of force claimed by Williams. Defendants are entitled to summary judgment in their favor on this claim.

Conditions of Confinement

Conditions which "deprive inmates of the minimal civilized measure of life's necessities" may amount to cruel and unusual punishment. *Rhodes v. Chapman*, 452 U. S. 337, 347 (1981). However, conditions which are merely restrictive or even harsh, "are part of the penalty that criminal offenders pay for their offenses against society." *Id*.

> In order to establish the imposition of cruel and unusual punishment, a prisoner must prove two elements - that 'the deprivation of [a] basic human need was *objectively* sufficiently serious,' and that '*subjectively* the officials acted with a sufficiently culpable state of mind.'

*Shakka v. Smith*, 71 F.3d 162, 166 (4th Cir. 1995) (emphasis in original; citation omitted). "These requirements spring from the text of the amendment itself; absent intentionality, a condition imposed on an inmate cannot properly be called "punishment," and absent severity, such punishment cannot be called "cruel and unusual." *Iko v. Shreve*, 535 F.3d 225, 238 (4th Cir. 2008) citing *Wilson v. Seiter*, 501 U.S. 294, 298-300 (1991).

Williams claims he was not served lunch, was not provided clothes, and did not have running water for four days while in the isolation cell. ECF No. 1. Defendants state that Williams was provided with three bagged meals each day he was in the isolation cell; that there is a working toilet and sink in the cell; and that he was provided with clothes. ECF No. 12.

7

Williams does not offer any evidence to dispute Defendants' assertions that the conditions of the isolation cell were not as he alleged in the Complaint. ECF No. 14. Consequently, Defendants are entitled to summary judgment on this claim.

Due Process

In prison disciplinary proceedings where an inmate faces the possible loss of diminution credits, he is entitled to certain due process protections. These include: (1) advance written notice of the charges against him; (2) a written statement of the evidence relied on and the reasons for taking any disciplinary action; (3) a hearing where he is afforded the right to call witnesses and present evidence when doing so is not inconsistent with institutional safety and correctional concerns, and a written decision; (4) the opportunity to have non-attorney representation when the inmate is illiterate or the disciplinary hearing involves complex issues; and (5) an impartial decision-maker. *See Wolff v. McDonnell*, 418 U.S. 539, 564-571 (1974). There is no constitutional right to confront and cross-examine witnesses or to retain and be appointed counsel. *See Baxter v. Palmigiano*, 425 U.S. 308, 322 (1976); *Brown v. Braxton*, 373 F.3d 501, 505-06 (4th Cir.2004). As long as the hearing officer's decision contains a written statement of the evidence relied upon, due process is satisfied. *See Baxter*, 425 U.S. at 323 n. 5. Moreover, substantive due process is satisfied if the disciplinary hearing decision was based upon "some evidence." *Superintendent, Mass. Correctional Institute v. Hill*, 472 U.S. 445, 455 (1985). Federal courts do not review the correctness of a disciplinary hearing officer's findings of fact. *See Kelly v. Cooper*, 502 F.Supp. 1371, 1376 (E.D.Va.1980). The findings will only be disturbed when unsupported by any evidence, or when wholly arbitrary and capricious. *See Hill*, 472 U.S. at 456; *see also Baker v. Lyles*, 904 F.2d 925, 933 (4th Cir.1990). As long as there is

some evidence in the record to support a disciplinary committee's factual findings, a federal court will not review their accuracy.

Williams claims his due process rights were violated when he was not permitted to produce the video surveillance tape at his adjustment hearing on January 11, 2013. ECF No. 1 and 14. The video was not produced as evidence because, as explained during the hearing, it did not exist. ECF No. 15 at Ex. 5. Thus, there was no intentional withholding of evidence that was exculpatory or relevant to the proceeding. Williams's adjustment decision was based on "some evidence," to wit, the testimony of the reporting officer. Defendants are entitled to summary judgment on this claim.

### Retaliation

In order to prevail on a claim of retaliation, Plaintiff "must allege either that the retaliatory act was taken in response to the exercise of a constitutionally protected right or that the act itself violated such a right." *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994). It is unclear how much of a showing of adversity must be made in order to survive a motion for summary judgment. *Compare Burton v. Livingston*, 791 F.2d 97, 100-101 (8th Cir. 1986) ("complaint that a prison guard, without provocation, and for the apparent purpose of retaliating against the prisoner's exercise of his rights in petitioning a federal court for redress, terrorized him with threats of death" sufficient to state claim). "'A complaint which alleges retaliation in wholly conclusory terms may safely be dismissed on the pleading alone.'" *Gill v. Mooney,* 824 F.2d 192, 194 (2nd Cir. 1987) (quoting *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2nd Cir. 1983)); *Pierce v. King*, 918 F. Supp. 932, 945 (E.D. N.C. 1996) (conclusory allegations of retaliation insufficient to state claim).

> Retaliation, though it is not expressly referred to in the Constitution, is nonetheless actionable because retaliatory actions may tend to chill

9

> individuals' exercise of constitutional rights. *Perry v. Sindermann,* 408 U.S. 593, 597 (1972). Where there is no impairment of the plaintiff's rights, there is no need for the protection provided by a cause of action for retaliation. Thus, a showing of adversity is essential to any retaliation claim.

*ACL U of Maryland, Inc. v. Wicomico County*, Md. 999 F.2d 780, 785 (4th Cir. 1993)

"In the prison context, we treat such claims with skepticism because '[e]very act of discipline by prison officials is by definition 'retaliatory' in the sense that it responds directly to prisoner misconduct.'" *Cochran v. Morris*, 73 F.3d 1310, 1317 (4th Cir. 1996) quoting *Adams v. Rice*, 40 F.3d 72,74 (4th Cir. 1994). Plaintiff "[b]ears the burden of showing that the conduct at issue was constitutionally protected and that the protected conduct was a substantial or motivating factor in the prison officials' decision." *Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir. 1996).

Williams asserts in his Motion for Default Judgment[4] and for Injunctive Relief that he is in fear for his life because the officers who assaulted him "continue to be around [him]" and "keep harassing [him]." ECF No. 11. He claims their actions are taken in retaliation for the filing of the instant case and that he is being threatened on a daily basis. *Id*. As relief he seeks a transfer to another prison. *Id*. Williams offers no specific examples of the alleged retaliation and it is impossible to discern whether the adverse actions taken against him are the result of the infractions he received or due to the filing of this case. Additionally, Williams has been transferred, making his request for injunctive relief moot. The retaliation claim is unsupported by adequate evidence and Defendants are entitled to summary judgment on the claim.

/s/
PETER J. MESSITTE
August 26, 2013 UNITED STATES DISTRICT JUDGE

---

[4] Defendants' response to the Complaint was filed in a timely manner; thus, there is no basis for Williams's Motion for Default Judgment and it shall be denied.